**Elton Larrie STAFFORD, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09-06-233 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted on June 26, 2007.

Decided Feb. 20, 2008.

404

Douglas M. Barlow, Beaumont, for appellant.

Henry A. Coe, III, District Atty., Kountze, for State.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

A jury convicted Elton Larrie Stafford of murdering his wife of thirty-one years, Marygene, by striking her "in the head with a stone." The jury further assessed Stafford's punishment at confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, for a term of seventy-five years, and fined Stafford in the amount of $10,000. In this direct appeal, Stafford presents five issues for our consideration. Issues four and five contest the presence of legally sufficient evidence in the record to sustain Stafford's murder conviction. We must consider these two issues at the outset as a successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court rather than a remand to the trial court. See Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.1996).

Under issues four and five, which we consider together, Stafford points out that

he was charged with murdering Marygene by striking her head with a stone, while the State's only evidence, from its blood spatter expert, was to the effect that Marygene's head was struck against the stone. As alleged by Stafford, "[t]he state wholly failed to adduce any testimony which demonstrated the *actus reus* as indicted." Stafford directs us to *Jackson v. Virginia*,[1] and *Malik v. State*[2] as setting out the appropriate appellate standard for reviewing his legal sufficiency challenge. Under the facts contained in the record, however, Stafford's argument is misguided.

In Texas criminal jurisprudence, the concept of "legal sufficiency" of the evidence is based upon the law of due process. *See Gollihar v. State*, 46 S.W.3d 243, 245 (Tex.Crim.App.2001). The Supreme Court in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) expressed it as follows: "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." This holding was given practical applicability in *Jackson v. Virginia*, which established a standard of appellate review that would ensure all criminal convictions satisfied at least the due process minimum announced in *Winship*. *See Jackson*, 443 U.S. at 319 n. 12, 99 S.Ct. 2781.[3] As we appreciate his argument, Stafford is not contending the State failed to proved that he intentionally or knowingly caused the death of Marygene; but instead, Stafford contends the State's proof as to how Stafford caused Marygene's death did not match how the State

alleged Stafford caused Marygene's death as set out in the indictment. This is otherwise referred to as a "variance."

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar*, 46 S.W.3d at 246 (citing 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.81 at 178 (1995)). While some jurisdictions treat variance claims as a notice-related issue, the Court in *Gollihar* reaffirmed its traditional stance in treating variance claims as a problem with the legal sufficiency of the evidence. *See Gollihar*, 46 S.W.3d at 247 n. 6, 256. Under either treatment, however, the general rule is that a variance that is not prejudicial to a defendant's substantial rights is immaterial. *See id.* at 247–48. Whether a defendant's substantial rights have been prejudiced by a variance between the indictment and the evidence at trial typically depends upon the answers to two inquiries: 1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and 2) whether prosecution under the purportedly deficient indictment would subject the defendant to the risk of being prosecuted later for the same crime. *See id.* at 248. A "material variance," also known as a "fatal variance," is not shown unless it is such as might mislead the defense, or might expose the defendant to

---

1. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

2. 953 S.W.2d 234 (Tex.Crim.App.1997).

3. The *Jackson* Court's familiar standard reads: "[T]he relevant question is whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

the danger of being put twice in jeopardy for the same offense. *See id.* at 257 n. 23.

 When arguing variance, the burden of demonstrating surprise or prejudice rests with the defendant. *Santana v. State,* 59 S.W.3d 187, 194 (Tex.Crim.App. 2001). In the instant case, Stafford simply argues the State's proof reversed the manner and means pleaded, *i.e.,* the State proved Marygene's death was caused by her head being struck upon a stone, but it pleaded that Marygene's death was caused by Stafford striking her in the head with the stone. Stafford does not contend that the indictment language led to an inability to defend against the murder charge, nor does he indicate how this alleged variance could subject him to the risk of later being prosecuted for the same offense. Under the facts and circumstances presented in the record, we find that any variance be-tween the pleadings and the proof at trial was not prejudicial to Stafford's substantial rights and was, therefore, immaterial.[4]

To sustain Stafford's conviction, the jury must only have unanimously found Stafford guilty of the *actus reus*—"intentionally or knowingly caus[ing] the death of . . . Marygene Stafford[.]" The way in which Stafford caused Marygene's death—by striking her in the head with a stone, or by striking her head onto a stone-is immaterial to a legal sufficiency/due process analysis as these allegations are merely "manner and means" and not essential elements of the offense that must be unanimously found by the jury. *See Pizzo v. State,* 235 . S.W.3d 711, 713 (Tex.Crim.App.2007).

In her concurring opinion in *Jefferson v. State,* 189 S.W.3d 305, 314–16 (Tex.Crim.App.2006)(Cochran, J., concurring), and later adopted by a majority of

---

**4.** The result is the same under the *Jackson v. Virginia* standard for evidentiary sufficiency. The record reflects the following exchange took place between the State and Dr. Tommy Brown, the forensic pathologist:

Q.[State] Okay. Based upon your autopsy, do you have an opinion as to the cause of Marygene Stafford's death?
A.[Dr. Brown] The cause of her death, I do.
Q. What is that opinion?
A. I termed it as "blunt force injuries of head with craniocerebral injury." "Craniocerebral injury" means she had a fractured skull and also injuries to her brain.
Q. Okay. Now, looking at those photos like we just did, is it possible that the same instrument was used or could have been used to strike both of those blows?
A. Yes, it's possible.
Q. Okay. Is it possible that one blow was struck with, say a big rock and another one was struck with a fist? Say, the temple area, is it possible that that was struck with a fist?
A. No. A fist would not cause these kind of injuries.
Q. Okay. Are those wounds that we just looked at on Ms. Stafford—she died from the one in the left temple area; right?

A. Yes.
Q. Are they consistent with her being struck in the head twice with a large stone or large rock that would be flat or maybe concave shape?
A. It could be consistent with that.
Q. Okay. You can't say what it was but it could be—it is consistent with that?
A. Yes, sir. I can't say whether it was or not, but it's consistent with that.

. . . .

Q. Okay. Let's assume that she was struck in the back of the head first and then in the left temple area second. Would the blow in the back of the head render her unconscious?
A. Most probably, yes.
Q. Okay. In your opinion, were those two blows—and based upon your autopsy, do you think she was rendered unconscious immediately or is there a possibility that she may not have been unconscious when she died? What I'm saying is: Did it knock her out where she didn't feel anything, or are you able to say that?
A. Well, no. If the one to the left temple area was struck first, then that's a—that would have rendered probably dead very shortly after she was struck, but I'm sure that she was rendered unconscious first.

the Court in *Stuhler v. State*, 218 S.W.3d 706, 717–19 (Tex.Crim.App.2007), Judge Cochran provided a rule of thumb for determining what the *actus reus* is, i.e., forbidden conduct the jury must be unanimous about, and what is "the mere means of satisfying the *actus reus* element of an offense[.]" *See Schad v. Arizona*, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Her analysis reads as follows:

> In sum, we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged). *Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.*

*Jefferson*, 189 S.W.3d at 315–16 (Cochran, J., concurring) (emphasis added) (footnote omitted).

In the instant case, the indictment language "by striking Marygene Stafford in the head with a stone" is not the *actus reus* of murder but merely the manner and means of committing the offense, a determination which does not require jury unanimity. *Id.* From the entire discussion set out above, we conclude the evidence was legally sufficient to sustain Stafford's murder conviction, and we find no abuse of discretion by the trial court in denying Stafford's motion for instructed verdict. Issues four and five are overruled.

Issue one complains of the admission of State's Exhibit No. 16, an envelope containing a single form for creating a simple will; a set of Texas divorce forms apparently photocopied from a self-help publication; correspondence purportedly in the handwriting of the victim, Marygene Stafford, and two cash-register receipts depicting purchases made by Stafford on the day of the murder. At trial, Stafford objected to admission of the divorce and will forms and to the handwritten correspondence on the grounds of hearsay, relevance, and on the fact that the State had not authenticated the correspondence as being written by Marygene. A brief hearing was conducted out of the jury's presence with the trial court ultimately overruling each of Stafford's objections.

 An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex.Crim. App.2007). As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, it must be upheld. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim. App.1990) (op. on reh'g)).

 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). A "statement" includes an oral or written verbal expression. *Id.* at 801(a)(1). An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay. *See Guidry v. State*, 9 S.W.3d 133, 152 (Tex.Crim.App.1999); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim.App.1995); *Jones v. State*, 843 S.W.2d 487, 499 (Tex.Crim.App.1992), *overruled on other grounds*, 48 S.W.3d 196, 200 (Tex.Crim.App.2001).

In *Guidry,* a murder-for-hire trial, the State offered into evidence, over Guidry's hearsay objection, a detective's testimony that the name and telephone number of a co-conspirator's girlfriend were listed in an address-book belonging to a third co-conspirator, the victim's estranged husband. *See Guidry,* 9 S.W.3d at 152. The Court of Criminal Appeals held the detective's testimony was not offered for the purpose of proving the telephone number actually belonged to the girlfriend, but was offered as circumstantial evidence of the link between the girl's co-conspirator boyfriend and the victim's husband, a conspiracy which the State ultimately tied to Guidry. *Id.*

In *Dinkins,* also a capital murder prosecution, the State offered into evidence a patient application form and an appointment book listing Dinkins' name and a name similar to Dinkins', respectively. *See Dinkins,* 894 S.W.2d at 347. The Court of Criminal Appeals held the evidence not hearsay, finding the two exhibits were tendered by the State to show how Dinkins became a suspect in the murder investigation. *Id.* Thus, the patient application form and the appointment book were not hearsay. *Id.*

▬▬▬ In the instant case, testimony indicated that the Texas divorce forms were recovered from the back-seat area of a vehicle Stafford identified as one operated primarily by him, and the will form was found on a scanner during the dismantling of a computer located in Stafford's personal computer room. The handwritten correspondence was located in Marygene's "computer room." We find that neither the will form nor the divorce forms were offered by the State at trial in an attempt to prove the truth of any matters asserted therein. The probative value of the divorce documents was as circumstantial evidence of the deteriorated condition of the Staffords' marriage at the time of the murder. Even if the will form on the scanner was not probative of a plan, we fail to see how admission of the document was harmful error requiring reversal. Tex.R.App. P. 44.2. As for the written correspondence, it was admissible over Stafford's hearsay objection as an exception under Tex.R. Evid. 803(3) relating to Marygene's "then existing state of mind, emotion, sensation, or physical condition[,]" so long as the handwriting was properly authenticated by the State as belonging to Marygene. *See* Tex.R. Evid. 901(a) (Authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim.App.1998). Handwriting may be properly authenticated by way of non-expert opinion testimony as to its genuineness based upon the non-expert's familiarity of the handwriting acquired independently of the litigation. *See* Tex.R. Evid. 901(b)(2).

▬▬▬ With regard to admitting evidence having questionable authenticity, the rules of evidence provide that preliminary questions concerning the admissibility of evidence shall be determined by the trial court, and when the relevancy of evidence depends upon the fulfillment of a condition of fact, the trial court shall admit the evidence upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. *See* Tex.R. Evid. 104(a), (b). Whether a conditional fact, such as authentication, has been proven by the proponent of the evidence is a question for the jury, with the trial court's role limited to a threshold determination of whether sufficient evidence has been presented to support such a finding. *See Druery v. State,* 225 S.W.3d 491, 502 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 128 S.Ct. 627, 169 L.Ed.2d 404 (2007). "In other words, the trial judge

should admit evidence that is relevant based upon a conditional fact only if there is sufficient evidence to support a jury finding that the conditional fact is true." *Id.* The Court in *Druery* further discussed the authentication process thusly:

> This authentication requirement can be satisfied by showing "Distinctive characteristics and the like: Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified.

*Druery,* 225 S.W.3d at 502 (footnotes omitted).

 In the instant case, two of the three handwritten letters begin with either "Stafford," or "to Stafford," and close with either "jeanie," or "love jeanie s." All three letters have the common theme of extreme disappointment, frustration, and sadness on the part of the writer with the state of her marriage. These letters were found in Marygene's "computer room" during the execution of a search warrant at the Stafford residence two days following the murder. The State argued the letters were written by the victim to Stafford during their marriage and were admissible under TEX.CODE CRIM. PROC. ANN. art. 38.36 (Vernon 2005).[5] Additionally, the State repeatedly assured the trial court that the victim's daughters were present and pre-

pared to testify that the handwriting in the three letters was that of their mother, Marygene Stafford.

 Based upon the doctrine of "conditional relevancy," the trial court may admit evidence on the condition that the party offering the evidence authenticate it, or "connect it up," at a later time. *See Powell v. State,* 898 S.W.2d 821, 829 (Tex.Crim.App.1994); *Fuller v. State,* 829 S.W.2d 191, 198–99 (Tex.Crim.App.1992), *overruled on other grounds by Castillo v. State,* 913 S.W.2d 529, 534 n. 2 (Tex.Crim.App.1995). In the instant case, the State did indeed authenticate the handwritten correspondence contained in State's Exhibit No. 16 through the victim's daughter, Debbie Shaw. Ms. Shaw recognized the handwriting on all three letters as being that of her mother. For the reasons set out above, we find that the trial court did not abuse its discretion in admitting the contents of State's Exhibit No. 16.[6] We overrule issue one.

 Stafford's second issue complains that the trial court erred in permitting the State to place Stafford's character into evidence for the sole reason of showing that Stafford acted in conformity with such character. He directs our attention to two of the State's witnesses, Mary Totino and Trooper Terrell Grant Vincent of the Louisiana State Police. Stafford contends that the testimony of both witnesses "was simply evidence of [Stafford's] character, offered to show that he acted in conformity therewith." Stafford contends that be-

---

**5.** Article 38.36(a) reads: "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

**6.** Stafford does not appear to have objected at trial, nor does he complain on appeal, concerning the two cash-register receipts that were also admitted into evidence at trial as a part of State's Exhibit No. 16.

cause his character was not placed at issue, the testimony by Totino and Vincent violated Tex.R. Evid. 404(a), (b). The State argued to the trial court, and now to us, that Totino's testimony involved her personal observations concerning the relationship between Marygene and Stafford, and therefore was admissible under Tex. Code Crim. Proc. Ann. art. 38.36. The State characterizes Totino's testimony as describing Stafford as "impatient, anxious, angry, aggravated and controlling." The State contends Totino did not testify to any "acts" upon Stafford's part, and that Stafford's "rude behavior" toward Marygene did not involve either a bad act or offense as contemplated under Rule 404(b).[7]

■ At the outset, we note the Court of Criminal Appeals has held that while the language of Rule 404(b) refers to "other crimes, wrongs, or acts," there is no requirement the evidence in question refer to or involve another criminal offense "or even misconduct in order to fall within the purview of Rule 404(b)." *Bishop v. State*, 869 S.W.2d 342, 345 (Tex.Crim.App.1993). Therefore, Stafford's objection to Totino's testimony under Rule 404(b) was proper. Nevertheless, we must overrule Stafford's complaint regarding Totino's testimony because the Court of Criminal Appeals has also held that the improper admission of evidence is not reversible error when the same evidence is admitted without objection either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). In the instant case, similar "prior relationship" testimony was also elicited from the following State's witnesses without objection: Lynette Williams (the Staffords' former cleaning woman), Debbie Shaw (Marygene's youngest daughter), Rannie Jolyne George (Marygene's supervisor), Peggy Abbott

(Marygene's sister), and Marianne Box (Marygene's eldest daughter).

■ While Stafford requested, and was granted, a running objection to Totino's testimony, the record does not indicate he requested that his running objection be applied to all witnesses testifying to "prior relationship" matters. Therefore, Stafford has failed to preserve for appellate review any alleged error regarding "prior relationship" testimony. *See Sattiewhite v. State*, 786 S.W.2d 271, 283 n. 4 (Tex.Crim. App.1989); *Goodman v. State*, 701 S.W.2d 850, 863 (Tex.Crim.App.1985), *overruled on other grounds by Hernandez v. State*, 757 S.W.2d 744, 751–52 n. 15 (Tex.Crim. App.1988); *Scaggs v. State*, 18 S.W.3d 277, 292 (Tex.App.-Austin 2000, pet. ref'd).

■ Trooper Vincent was the State's final witness, and was called to testify about an incident involving Stafford that occurred at Harrah's Casino in Louisiana on August 12, 2004. Vincent explained that his duties with the Louisiana State Police involved casino gaming investigations. Vincent testified that on August 12, 2004, he was asked to investigate the possible theft of $5400 from the hotel room of Elton Stafford. Vincent identified Stafford as the man who lodged the theft complaint. Vincent stated that after he reviewed security records and watched video tape of surveillance cameras that recorded anyone entering or exiting Stafford's hotel room, he came to the conclusion that Stafford's theft allegations were false; that Stafford had "gambled all his money away and was looking for some way to show the money was missing."

Prior to Vincent's testimony, a brief hearing was held on its admissibility. Stafford objected under Rule 404(a), (b), Rule 401, and Rule 403. The State argued

---

**7.** All subsequent references to "Rule" or "Rules" refer to the Texas Rules of Evidence.

Vincent's testimony was consistent with Stafford's motive for murdering his wife-gambling. The State also argued that the State's case-in-chief indicated that during the murder investigation Stafford denied committing the murder and attempted to set up an alibi. Therefore, the State continued, "[t]he State should be allowed to show and prove evidence that directly or circumstantially cast doubt of veracity of the Defendant's own statements.... And it goes directly to the Defendant's state of mind at the time that the murder was committed." The trial court overruled Stafford's objections.

 An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim. App.2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *See Montgomery*, 810 S.W.2d at 391. Generally, evidence that does not have relevance apart from character conformity is inadmissible. Tᴇx.R. Evɪᴅ. 404(a). However, under Rule 404(b), extraneous misconduct evidence is not inadmissible if the evidence is relevant to a fact of consequence apart from its tendency to show conduct in conformity with character.[8] *See Johnston v. State*, 145 S.W.3d 215, 219 (Tex.Crim.App.2004). Nevertheless, "an issue regarding the general credibility of a witness[, or the accused] in a criminal trial is not a material issue in the sense that it will justify the admission of inherently prejudicial evidence of details of an extraneous offense committed by the witness [or the accused]." *See Owens v. State*, 827 S.W.2d

911, 917 n. 5 (Tex.Crim.App.1992) (quoting *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Crim.App.1979)).

Once a trial court rules that extraneous misconduct evidence is admissible under Rule 404(b), the opponent of the evidence may further object under Rule 403. *See Santellan v. State*, 939 S.W.2d 155, 169–70 (Tex.Crim.App.1997). Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tᴇx.R. Evɪᴅ. 403.

 In keeping with the presumption of admissibility of relevant evidence, trial courts should favor admission in close cases. *See Montgomery*, 810 S.W.2d at 389. The term "probative value" refers to the inherent probative force of an item of evidence, i.e., how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for that item of evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). When conducting a Rule 403 balancing test, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule. *See e.g. Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App.1988), *overruled on other grounds by Alford v. State*, 866 S.W.2d 619, 624 n. 8 (Tex.Crim.App.1993). For Rule 403 purposes, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with

---

**8.** Rule 404(b) reads, in pertinent part, as follows: "Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity there-

with. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

(2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

In the instant case, we find Trooper Vincent's testimony admissible under Rules 401, 404(a), (b), and 403. From the record we discern that part of the State's theory in this case was that Marygene met her fate when she threatened to quit her job and thus, cut off any further support of Stafford's gambling. The fact that only eleven days after his wife's brutal murder, Stafford was in Louisiana casinos losing a relatively large sum of money and borrowing more money so he could continue gambling, as well as the testimony concerning his apparent false theft report, was admissible under Rule 401 as relevant to Stafford's apparent remorseless mental state, and was consistent with the State's theory that it was Stafford's addiction to gambling that was at the heart of the money problems that essentially poisoned the relationship between Stafford and Marygene. As such, it was not merely evidence of character conformity, but was also admissible under Rule 404(b) for the above-mentioned "other purposes" (Stafford's mental state and indirect article 38.36 "relationship" evidence). *See Huffman v. State*, 775 S.W.2d 653, 662 (Tex.App.-El Paso 1989, pet. ref'd) ("Even declarations by the accused after the commission of the offense are admissible to the extent that they demonstrate malice, motive or the state of mind of the defendant. *Gentry v. State*,

172 Tex.Crim. 345, 356 S.W.2d 793, 795 ( [1962] )).").

Under Rule 403, the probative value of Stafford's remorseless mental state and his apparent addiction to gambling is what also makes the evidence prejudicial. In *Hall v. State*, 67 S.W.3d 870, 874–76 (Tex. Crim.App.), *cert. granted, judgment vacated on other grounds*, 537 U.S. 802, 123 S.Ct. 70, 154 L.Ed.2d 4 (2002), the defendant made grotesquely incriminating out-of-court statements to news media during a video-taped interview. *Id.* at 875. During his subsequent capital murder trial, the video tape was introduced over the defendant's Rule 401 and 403 objections. *Id.* at 876. On direct appeal, the Court of Criminal Appeals held the video tape "simply reflects the reality of the crime committed and [defendant's] lack of remorse. In short, the prejudicial effect of this evidence comes from nothing more than what [defendant] himself has done. He cannot successfully say, 'You must not be outraged by my outrageous behavior.'" *Id.* The Court concluded that though prejudicial, the video tape was not unfairly so. *Id.* We, too, find that, although prejudicial, Trooper Vincent's testimony regarding Stafford's gambling spree, involving a relatively large gambling loss only eleven days after Marygene's murder, as well as the testimony concerning his apparent false theft report, is not unfairly prejudicial. Rules 401, 404(a), (b), and 403 are not violated here. Finding no abuse of discretion by the trial court, issue two is overruled.

The last issue for consideration complains of trial court error in overruling Stafford's objection to the jury charge. This issue is based upon the trial court's denial of Stafford's request for an instruction on the misdemeanor offense of criminally negligent homicide and an accompanying instruction on the mental state of

criminal negligence. The trial court did, however, include a jury instruction on the lesser-included offense of manslaughter, although the record fails to reveal if either party requested it, or if the court submitted it to the jury *sua sponte*. Stafford contends that the evidence at trial also entitled him to an instruction on the lesser-included offense of criminally negligent homicide.

 Reviewing courts use a two-step analysis in determining whether the defendant was entitled to a jury instruction on a lesser-included offense. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim. App.2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). First, the requested instruction must indeed be a lesser-included offense of the offense charged, and, second, there must be some record-evidence that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex.Crim.App.2006). The record-evidence "must establish the lesser-included offense as a valid, rational alternative to the charged offense." *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App.2006).

 Under the first prong of the analysis, an offense is considered to be a lesser-included offense if:

(1) it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). The analysis of the first prong is ultimately a question of law. *Hall*, 225 S.W.3d at 535. Under this analysis, we compare the statutory elements of the charged offense as modified by the indictment with the elements of the potential lesser-included offense. *See Hall*, 225 S.W.3d at 535–36; *Hayward v. State*, 158 S.W.3d 476, 478 (Tex.Crim.App.2005). In the instant case, Stafford was indicted under Tex. Pen.Code Ann. § 19.02(b)(1) (Vernon 2003), with the following modified statutory elements:

(1) Stafford

(2) intentionally or knowingly

(3) caused the death of an individual, namely Marygene Stafford

(4) by striking Marygene Stafford in the head with a stone.

 The potential lesser-included offense, criminally negligent homicide, is found under Tex. Pen.Code Ann. § 19.05(a) (Vernon 2003), and consists of the following modified statutory elements:

(1) Stafford

(2) with criminal negligence

(3) caused the death of an individual, namely Marygene Stafford

(4) by striking Marygene Stafford in the head with a stone.

As the potential lesser-included offense is distinguishable from the offense charged only by a less culpable mental state, it is a lesser-included offense of the offense charged. Tex.Code Crim. Proc. Ann. art. 37.09(3). We therefore proceed to the second prong of the analysis, determining whether there is any record-evidence that would have permitted Stafford's jury to find that if he was guilty at all, he was

guilty only of criminally negligent homicide. *See Hall*, 225 S.W.3d at 536.

Recall that in addition to instructing the jury on the charged offense, the trial court instructed the jury on the lesser-included offense of manslaughter, permitting a conviction if the jury found Stafford "recklessly caused the death of … Marygene Stafford, by striking Marygene Stafford in the head with a stone[.]" Under TEX. PEN. CODE ANN. § 6.03 (Vernon 2003), the pertinent portions of the definitions of the four culpable mental states are as follows:

> (a) A person acts intentionally, or with intent, with respect to … a result of his conduct when it is his conscious objective or desire to … cause the result.
>
> ....
>
> (b) A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly, or is reckless, with respect to … the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that … the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
>
> (d) A person acts with criminal negligence, or is criminally negligent, with respect to … the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that … the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

In the instant case, Stafford argues that because the trial court instructed the jury on manslaughter, "some evidence of the charged offense of murder was absent." Stafford surmises that the missing element must involve the culpable mental state and that because the trial court instructed the jury on the lesser-included offense of manslaughter, which involves a "reckless" culpable mental state, the trial court erred in refusing to include an instruction on criminally negligent homicide which involves the least culpable mental state of criminal negligence.

Recently, the Court of Criminal Appeals pointed out that the culpable mental states of "recklessness" and "criminal negligence" must not be confused or blended into each other. *See Williams v. State*, 235 S.W.3d 742, 750–51 (Tex.Crim.App. 2007). The Court elaborated further, *viz*:

> With criminal negligence, the defendant *ought to* have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people. Criminal negligence depends upon a morally blameworthy failure to appreciate a substantial and unjustifiable risk while recklessness depends upon a more serious moral blameworthiness-the actual disregard of a known substantial and unjustifiable risk.

*Id.* (footnote omitted).

In the instant case, we will not speculate upon what basis the trial court included the lesser-included offense of manslaughter in the jury's instructions. We do note that Stafford's "missing element" argument does not appear to have been made to the trial court. Regardless

of this, we find no record-evidence indicating Marygene's murder was the result of an act of criminal negligence. The uncontroverted evidence indicates Marygene was struck in the head at least twice with a great deal of force as at least one of the blows fractured her skull and caused injuries to her brain. Additionally, her injuries were consistent with being struck with "a big rock" and not with a fist, as "[a] fist would not cause these kind of injuries." Also, the blood spatter expert testified that the rock or stone struck Marygene in the head at a speed ranging from five to twenty-five feet per second. Recall that Stafford did not testify in his defense. Our review of the record does not identify any evidence which would make the offense of criminally negligent homicide a valid, rational alternative to the offense of murder. In other words, there is simply no evidence that indicates that in striking Marygene in the head at least twice with "a big rock," Stafford failed to appreciate that a substantial and unjustifiable risk of death to Marygene could result from his conduct. *See, e.g. Stadt v. State,* 182 S.W.3d 360, 364 (Tex.Crim.App.2005).

 Moreover, assuming without deciding the requested instructions were supported by some evidence, any error would be harmless because the jury's rejection of the intervening manslaughter instruction indicates the jury legitimately believed Stafford was guilty of the greater, charged offense, and because the manslaughter option is not a less plausible theory of culpability than is criminally negligent homicide under the record before us. *See Masterson v. State,* 155 S.W.3d 167, 171–72 (Tex. Crim.App.2005), *cert. denied,* 546 U.S. 1169, 126 S.Ct. 1330, 164 L.Ed.2d 47 (2006); *Flores v. State,* 215 S.W.3d 520, 530–31 (Tex.App.-Beaumont 2007), *aff'd,* 245 S.W.3d 432 (Tex.Crim.App., 2008). We find no abuse of discretion by the trial court in refusing Stafford's requested jury instruction on criminally negligent homicide. Issue three is overruled, and the judgment of the trial court is affirmed.

AFFIRMED.