COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LAURA JUAREZ, | § | |
| | | No. 08-12-00365-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20120D02286) |
| | § | |

## **O P I N I O N**

Appellant Laura Juarez was convicted of murdering her husband by striking him with a motor vehicle and was sentenced to ninety-nine years' confinement. On appeal, Appellant contends the trial court erred in refusing to suppress her recorded statement and in denying her request to submit criminally negligent homicide as a lesser-included offense. Appellant also asserts there is no evidence of *mens rea* to support her murder conviction. We affirm.

### FACTUAL BACKGROUND

On February 10, 2012, Appellant and her husband, Salvador Juarez, went to a nightclub with friends and became inebriated. At some point, Appellant became upset and jealous when Salvador introduced himself to three other women who had joined them at their table. Later that

night after Appellant and Salvador had returned home, Appellant called 9-1-1. She told the responding firemen she had awakened to find Salvador was not breathing. When the firemen informed Appellant that Salvador was dead, she told them they had consumed two bottles of liquor at the club, and Salvador had been so drunk when they had returned home, she was required to carry him into the apartment.

Appellant later repeated to police officer Melendez that she had awakened to find Salvador not breathing. When Officer Melendez asked about marks he saw on Appellant's neck, however, Appellant admitted that she and Salvador had fought after she had caught him talking to one of her friends. She said Salvador then left the apartment, and she later saw him standing by the front gate of the apartment complex. Appellant asserted that she drove out and picked up Salvador in their van, drove him back to the apartment, and then was forced to drag him out of the van and back into the apartment bedroom because he had passed out. She had then fallen back asleep and awakened later to find Salvador was not breathing.

When Sergeant Cox arrived, he and Officer Melendez found marks on the lower right leg of Salvador's body. Sergeant Cox also observed damage and tearing on the right side of Salvador's jeans in the same area. The officers overheard Appellant telling her friends that she had crashed into the apartment complex gate. Officer Melendez examined the apartment complex gate and verified it had been damaged. Sergeant Cox inspected the van and found damage on the driver's side fender and side panels. He also found green transfer paint on the damaged portion of the white van and observed that the apartment complex gate was the same green color. Cox examined the gate and found damage and debris indicating a vehicle had

2

possibly struck the fence.[1]

Officer Soto, who photographed the scene, noted the green fence had white paint on it and that the Dodge Durango van driven by Appellant was white. Officer Madrid, who collected evidence from the scene, collected paint scrapings from the green fence that contained white paint transfer marks. She also observed green paint transfer marks on Salvador's belt and shirt.

Charles Harmon, a collision re-constructionist, examined tire marks at the scene, the damage to the fence, and the debris left from the vehicle. He noted that white paint had transferred onto the green fence and that green paint had transferred onto the white Dodge Durango van. Harmon found an acceleration mark on the roadway that matched the tires on Appellant's white Dodge Durango van, and found no signs of braking. Harmon determined that the Durango van had struck the fence. The medical examiner, Dr. Juan Contin, performed an autopsy and determined Salvador had been hit by a vehicle and had received multiple crush injuries causing his death.

In Appellant's custodial interview taken the morning of February 11, Appellant admitted she had been driving the Dodge Durango van and had possibly struck Salvador when she turned the steering wheel toward him and ran up on the sidewalk. Appellant admitted that she was still upset at Salvador at the time, but denied aiming the car at Salvador or intending to kill him.

## MOTION TO SUPRESS

At trial, Appellant sought to suppress the DVD recording of her custodial interview. In her first issue, Appellant contends the trial court erred in denying her motion to suppress because

---

[1] Appellant also told Sergeant Cox that she had fought with Salvador when she woke up and heard him talking on her phone with another female, that she went looking for Salvador in their van after he left the apartment, and that after finding him standing by the entrance to the apartment complex, she drove him back to the apartment and had to drag him into the apartment because he was unable to walk.

3

she did not knowingly, intelligently, and voluntarily waive her rights under Article 38.22 of the Code of Criminal Procedure[2] and *Miranda v. Arizona*.[3] Appellant specifically contends that "merely [nodding] her head" after a night of heavy drinking was "not a sufficient indication of understanding and appreciat[ing]" her rights.

The trial court held a *Jackson v. Denno* hearing to determine whether Appellant's statement was knowing and voluntary and thus admissible. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At the hearing, the DVD recording of Appellant's interview was played for the trial court. Detective Hernandez, who performed the recorded interview, testified that he first made contact with Appellant in the morning and began her custodial interview at the police headquarters around 9 a.m. Prior to recording, Hernandez spent about an hour establishing rapport, obtaining identifying information, and allowing Appellant to provide whatever details she wanted to give. During this time, Appellant was allowed to go to the restroom. Hernandez advised Appellant that she was a suspect in the investigation into the death of her husband and informed her of her *Miranda* rights. Appellant was allowed to read a *Miranda* card setting out her rights. Appellant signed the *Miranda* card at 9:24 a.m. Hernandez testified that Appellant did not appear to be intoxicated or under the influence of any drug or medication that would affect her understanding or comprehension of her *Miranda* rights. Hernandez also testified, and the DVD recording showed, that once the recording began, Hernandez advised Appellant of her *Miranda* rights a second time, and that when Hernandez asked if Appellant

---

[2] Article 38.22 establishes procedural safeguards for securing the privilege against self-incrimination. TEX. CODE CRIM. PROC.ANN. art. 38.22 (West 2005). It provides that no oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding unless (1) the statement was recorded, and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Id*. at 38.22, § 3.

[3] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

understood and waived those rights, Appellant responded "uh-huh" and nodded her head in assent, and when asked to clarify, responded "yes." At no time did Appellant ask to terminate the interview or request counsel. She was provided water and restroom breaks during the course of the interview. Appellant did not indicate she did not understand English nor did she seek any assistance from Hernandez in explaining the *Miranda* rights. Hernandez did not promise Appellant anything in return for her statement, nor did he threaten, coerce, or place her under any duress while she was giving the statement.

The trial court entered findings of fact and conclusions of law regarding whether Appellant's statement was voluntary and knowingly given. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005). The trial court concluded that under the totality of the circumstances, Appellant's statement was obtained in compliance with Article 38.22 and that Appellant intelligently, knowingly, and voluntarily waived her rights both before and during her recorded statement. The trial court found that Appellant was calm, voluntarily answered the questions, and did not appear to be under duress, and that Appellant was not threatened or coerced in any way so as to render the statement involuntary. She was given restroom breaks and was offered water. No promises were made in exchange for her statement. The court also determined that the dialogue between Hernandez and Appellant showed that Appellant's understanding was not hindered by intoxication arising from medications, drugs, or alcohol. At no time did Appellant indicate that she did not understand what she was doing. Appellant never asked to terminate the interview, to seek counsel, nor did she indicate she did not understand her rights. Appellant was calm, and there was no indication from the recording that she did not understand what was being asked.

5

A trial court's ruling at a suppression hearing is reviewed for an abuse of discretion. *Ramos v. State,* 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008). In reviewing the trial court's decision, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We afford almost total deference to a trial court's determination of historical facts. *See Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App. 2006). We afford the same deference to the trial court's resolution of mixed questions of law and fact that turn on an evaluation of credibility and demeanor, and review *de novo* only the court's resolution of mixed questions not falling within this category. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos,* 245 S.W.3d at 418.

Appellant argues that the record does not show she explicitly waived her rights. But we note that "a waiver [of] one's right to an attorney may be found in an express written or oral statement or may be inferred from actions and words of the person interrogated." *Barefield v. State,* 784 S.W.2d 38, 41 (Tex.Crim.App. 1989) (citing *Mays v. State,* 726 S.W.2d 937, 946 (Tex.Crim.App. 1986)); *Joseph v, State*, 309 S.W.3d 20, 24 (Tex.Crim.App. 2010) (waiver can be inferred from the actions and words of the person interrogated). The oral-confession statute does not require an express verbal statement from an accused that he waives his rights prior to giving a statement. *Barefield*, 784 S.W.2d at 40–41. Rather, the voluntariness of a confession is assessed by looking at the totality of the circumstances. *Id.*

Ultimately, the question is not whether Appellant "explicitly" waived her *Miranda* rights, but whether she did so knowingly, intelligently, and voluntarily. *Joseph*, 309 S.W.3d at 25. To

evaluate whether Appellant knowingly, intelligently, and voluntarily waived her Miranda rights, the Court of Criminal Appeals instructs us to apply the standard outlined in *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). *Joseph*, 309 S.W.3d at 25. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Applying this standard, we agree with the trial court that the totality of the circumstances indicated that Appellant knowingly, intelligently, and voluntarily waived her Miranda rights.

We begin our analysis by noting two important things. First, before her statement was recorded, Appellant signed a *Miranda* waiver card that explicitly informed Appellant of her *Miranda* rights, and noted that she understood those rights and knowingly, intelligently, and voluntarily waived those rights. While signing the waiver card did not fulfill the requirement under section 3 of Article 38.22 that "prior to the statement *but during the recording*" the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights, it is strong evidence of a knowing and voluntary waiver. Second, during the recorded statement, Appellant did not, as she contends, merely nod her head when asked for a second time if she understood and waived her rights. Rather, after being informed of her rights, Appellant explicitly and affirmatively responded that she understood and knowingly, intelligently, and voluntarily waived those rights:

> Q. Okay. For that — I read you your — your — your rights. You understand, ma'am?
>
> A. Yes.

7

Q. Yes? Okay. Now, there's a small statement here that I need to advise you on. Just tell me if you understand this, ma'am, okay?

"I understand my rights and I hereby knowingly, intelligently, and voluntarily waive these rights."

With that being said, I would like to talk to you and get your side of the story. Do you understand these?

A. Uh-huh.

Q. Yes?

A. Yes.

When an officer explicitly asks a suspect if she is willing to give up her *Miranda* rights, "[t]his question, if answered affirmatively, results in an express waiver." *Joseph*, 309 S.W.3d at 29 (Cochran, J. concurring). When police obtain an express waiver from the suspect, whether written or oral, the State's task to meet its burden of proof "is not so difficult." *Id.*

The totality of the circumstances surrounding the interrogation shows Appellant's wavier was voluntary and resulted from a free and deliberate choice without intimidation, coercion, or deception. Both the testimony and the recording show that immediately after being warned by Officer Hernandez that she had the right to remain silent and that she did not have to make any statement to anyone, Appellant willingly participated in the interview. At no time during the statement did Appellant request an attorney, and at no time did she ask that the interview be stopped. She was given restroom breaks, and was offered and given water. The recording shows no evidence of intimidation or coercion or that Appellant appeared to be under duress or distraught. Rather, her emotional state was calm. Officer Hernandez testified, and the recording shows, that he did not coerce Appellant in any way and that at no time did he promise Appellant

8

anything in exchange for giving a statement.

Likewise, the totality of the circumstances surrounding the interrogation also shows Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Before her recorded statement was taken, Hernandez advised Appellant that she was a suspect in the investigation and informed her of her *Miranda* rights. Appellant was allowed to read the *Miranda* card, which advised her of her rights to remain silent, to have an attorney, and to terminate the interview at any time, and Hernandez explained that he was advising her of her rights because she was a subject of the investigation into the death of her husband. Appellant signed the *Miranda* card, representing that she was making a knowing, intelligent, and voluntary waiver of her rights. Despite Appellant's contention that this was all done after a night of heavy drinking, there was no indication that Appellant appeared to be intoxicated or under the influence of any drug or medication that would affect her understanding or comprehension of her *Miranda* rights and the consequences of wavier. Also contrary to Appellant's contention, during the recording, Appellant explicitly answered "yes" when asked if she understood her rights and was waiving those rights. Appellant never indicated that she did not understand English, nor did she seek any assistance from Hernandez in explaining the *Miranda* rights. At no time did Appellant indicate she did not understand or know her rights or what she was doing. We also find it significant that Appellant explicitly waived her rights twice: once when she signed the *Miranda* card and again during the recorded interview.

The totality of the circumstances and our review of the DVD recording of the interview show that Appellant knowingly, intelligently, and voluntarily waived her rights under Article 38.22 and *Miranda*. We conclude the trial court did not abuse its discretion in denying

9

Appellant's motion to suppress.   Appellant's first issue is overruled.

## LESSER-INCLUDED OFFENSE

This case was submitted to the jury on murder and the lesser-included offense of manslaughter.   The jury found Appellant guilty of murder.   Appellant contends the trial court erred in refusing to submit the lesser-included offense of criminally negligent homicide.   Specifically, Appellant relies on her own statements in her recorded interview that she did not intend to hit Salvador with the vehicle.   She argues that because the trial court determined it was necessary to charge the jury on the lesser-included offense of manslaughter, which requires a finding of recklessness, it was also required to submit the lesser-included offense of criminally negligent homicide, because the "evidence in the case at bar supports a finding of negligence just as much as it supports a finding of recklessness[.]"   We disagree.

We apply a two-part inquiry to determine whether an instruction on a lesser-included offense should be given to the jury.   *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919 (1993).   First, the requested instruction must indeed be a lesser-included offense of the offense charged.   *Hall*, 225 S.W.3d at 535-36.   Second, before the lesser offense should be submitted, there must be some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense.   *Id*. at 536; *Guzman v. State*, 188 S.W.3d 185, 188-89 (Tex.Crim.App. 2006).

The first step is a question of law and begins with the offense and the indictment.   *Hall*, 225 S.W.3d at 535.   Whether a jury instruction must be given on a lesser offense does not depend

10

on the evidence to be produced at the trial but is determined by comparing the elements of the charged offense, as alleged in the indictment or information, with the elements of the potential lesser-included offense. *Id*. at 535-36. Appellant was charged with murder in two manners: (1) by intentionally and knowingly causing the death of Salvador Juarez by striking him with a motor vehicle; and (2) by striking Salvador Juarez with a motor vehicle, an act clearly dangerous to human life, with the intent to cause serious bodily injury, that caused his death. An offense is considered to be a lesser-included offense if, among other things, "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission[.]" TEX. CODE CRIM. PROC. ANN. art. 37.09(3)(West 2006). An indictment for murder differs from criminally negligent homicide only in the required culpable mental state. Murder as charged in the present case required that Appellant either intentionally or knowingly caused Salvador's death, or with the intent to cause serious bodily injury committed an act clearly dangerous to human life that resulted in his death. TEX. PENAL CODE ANN. § 19.02(b)(1, 2)(West 2011). Criminally negligent homicide requires only that the death be caused "by criminal negligence." *Id.* at § 19.05(a)(West 2011). Because the potential lesser-included offense of criminally negligent homicide is distinguishable from the offense of murder as charged by only a lesser culpable mental state, it is a lesser-included offense. *Stafford v. State*, 248 S.W.3d 400, 413 (Tex.App. – Beaumont 2008, pet. ref'd).

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Rousseau*, 855 S.W.2d at 672-73; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex.Crim.App. 2005). The evidence must be evaluated in the context of the entire record. *Moore v. State*, 969 S.W.2d 4,

11

8 (Tex.Crim.App. 1998). There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or conflicts with other evidence. *Id*. Anything more than a scintilla of evidence may entitle a defendant to a charge on a lesser offense. *Hall*, 225 S.W.3d at 536. It is not sufficient, however, that the jury merely may disbelieve crucial evidence pertaining to the greater offense. *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex.Crim.App. 1997), *cert. denied*, 523 U.S. 1079 (1998). Rather, there must be some evidence directly germane to the lesser-included offense before an instruction is warranted. *Id*.; *Ramirez v. State*, 976 S.W.2d 219, 227 (Tex.App. – El Paso 1998, pet. ref'd).

Thus, we must determine whether there was some evidence in the record that would have permitted a rational jury to find that, if Appellant was guilty, she was guilty of only criminally negligent homicide. A person acts with criminal negligence:

> [W]hen he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(d)(West 2011). After reviewing the record, we have found nothing in the record, not even the testimony in Appellant's recorded statement, to suggest Appellant failed to perceive or was unaware that a risk of death or serious bodily injury existed. *See Tompkins v. State*, 774 S.W.2d 195, 211 (Tex.Crim.App. 1987), *aff'd*, 109 S.Ct. 2180 (1989) (quoting *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex.Crim.App. 1986) ("It is encumbent that the record contain evidence showing an unawareness of the risk before a charge on criminally negligent homicide is required.")). The physical evidence showed that in striking Salvador,

12

Appellant accelerated toward the fence without braking. Appellant acknowledged that she was still upset when she saw Salvador standing by the fence, and that she turned the van and drove up on the sidewalk "straight to the fence," crashing her van into the fence where Salvador was standing. While Appellant stated that "I wasn't aiming at him" and "I didn't mean to," there is no evidence that Appellant was unaware that a risk of death or serious bodily injury existed from turning her van straight at the fence and driving up on the sidewalk toward Salvador. Speculation that Appellant did not intend the result is not evidence of a lack of awareness or perception of the risk her conduct created. *See Tompkins*, 774 S.W.2d at 212 ("Just because it might be speculated that appellant did not intend the result, given the admissible evidence, such does not change his awareness or perception of the risk his conduct created."); *see also Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App. 1986) (a defendant's claim that he did not intend to kill cannot be "plucked out of the record and examined in a vacuum"). Because there was no evidence Appellant was unaware of the risk her conduct created, Appellant was not entitled to an instruction on the lesser-included offense of criminally negligent homicide.

Moreover, even if the trial court erred in refusing to charge the jury on criminally negligent homicide, that error was harmless. *See Masterson v. State*, 155 S.W.3d 167, 171-72 (Tex.Crim.App. 2005), *cert. denied,* 546 U.S. 1169 (2006); *Stafford*, 248 S.W.3d at 415; *Flores v. State*, 215 S.W.3d 520, 530-31 (Tex.App. – Beaumont 2007), *aff'd*, 245 S.W.3d 432 (Tex.Crim.App. 2008). This case was submitted to the jury on murder and the lesser-included offense of manslaughter, which would have allowed the jury to find that Appellant recklessly caused Salvador's death by disregarding a risk of which she was aware. The jury, however, rejected manslaughter and convicted Appellant of murder. Any error in refusing to submit

criminally negligent homicide was harmless because the jury's rejection of the intervening manslaughter instruction indicates the jury legitimately believed Appellant was guilty of the charged offense of murder along with its higher culpability. Further, under the record before us, the manslaughter option is not a less plausible theory of culpability than criminally negligent homicide. *Stafford*, 248 S.W.3d at 415. Accordingly, under the facts of this case, and in light of the jury's conviction of Appellant of murder instead of the lesser-included offense of manslaughter, any error in failing to charge the jury on criminally negligent homicide did not harm Appellant. *Masterson,* 155 S.W.3d at 171-72; *Stafford*, 248 S.W.3d at 415.

We conclude the trial court did not abuse its discretion in refusing the requested instruction on criminally negligent homicide. Issue Two is overruled.

### MENS REA

In Issue Three, Appellant contends the State failed to prove the *mens rea* element to support her murder conviction, and that therefore the trial court erred in failing to direct a verdict of not guilty. To support this argument, Appellant again relies on her statements in the recorded interview that she did not aim the vehicle at Salvador and did not intend to kill or injure him.

A challenge to a trial court's ruling on a motion for directed verdict is actually a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990), *cert. denied*, 499 U.S. 954 (1991). In a legal sufficiency review, we consider all the evidence in the light most favorable to the verdict, and the reasonable inferences that flow from it, to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010).

14

In performing our sufficiency review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131(2000). We presume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). We determine only whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). Each fact is not required to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* at 13 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993)). Circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).

We measure the sufficiency of the evidence by the elements of the offense as defined by the "hypothetically correct jury charge" for the case. *Miles v. State*, 357 S.W.3d 629, 631 (Tex.Crim.App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The first paragraph of the indictment alleges Appellant intentionally or knowingly caused the death of Salvador by striking him with a motor vehicle. *See* TEX. PENAL CODE ANN. §

15

19.02(b)(1)(West 2011). The second paragraph of the indictment alleges Appellant intentionally, with intent to cause serious bodily injury to Salvador, committed an act clearly dangerous to human life; namely, striking Salvador with a motor vehicle that caused his death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2)(West 2011). Therefore, to satisfy a hypothetically-correct jury charge, the State was required to prove that Appellant either: (1) intentionally or knowingly caused Salvador's death by striking him with a motor vehicle; or (2) with intent to cause Salvador serious bodily injury, intentionally struck him with a motor vehicle and caused Salvador's death.[4]

Appellant contends the evidence is insufficient to show she acted intentionally or knowingly because in her recorded statement she stated that she drove only in the direction of the fence, not at Salvador, and that she repeatedly denied she intended to kill or harm her husband. While this testimony constitutes some evidence that Appellant may have lacked the necessary intent or knowledge, it was not the only evidence of *mens rea* before the jury. The physical evidence showed that Appellant did in fact strike Salvador crushing him against the fence, and that in striking Salvador, Appellant accelerated toward the fence without braking. And, in her statement, Appellant acknowledged that she was still upset when she saw Salvador standing by the fence, and that she turned the van toward the fence, drove up on the sidewalk "straight to the fence," and crashed her van into the fence where Salvador was standing. Whether a defendant had the requisite intent to commit an offense is a fact question for the jury. *Brown v. State*, 122 S.W.3d 794, 799 (Tex.Crim.App. 2003), *cert. denied,* 541 U.S. 938 (2004). Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94

---

[4] A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a)(West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b)(West 2011).

(Tex.Crim.App. 1978); *Agripino v. State*, 217 S.W.3d 707, 715 (Tex.App. – El Paso 2007, no pet.). Ordinarily, proof of a culpable mental state must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex.Crim.App. 1984); *Agripino*, 217 S.W.3d at 715. The jury could have reasonably inferred from the evidence that Appellant either intentionally or knowingly caused Salvador's death by striking him with a motor vehicle or intended to cause Salvador serious bodily injury by striking him with a motor vehicle thereby causing his death. Further, the jury was not required to believe Appellant's claims that she did not aim the vehicle at Salvador and did not intend to kill or harm him. The jury was free to believe some, all, or none of the testimony and other evidence presented. *See McFarland v. State*, 928 S.W.2d 482, 496 (Tex.Crim.App. 1996). In light of the physical evidence and Appellant's repeated attempts to withhold information and misdirect the police concerning exactly what had happened that night, the jury could have reasonably rejected Appellant's claims that she did not intend to kill Salvador or cause him serious bodily injury.

Viewing all the evidence in the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Appellant, as alleged in the indictment, intentionally or knowingly caused Salvador's death, or with the intent to cause serious bodily injury, intentionally committed an act clearly dangerous to human life by striking Salvador with her vehicle causing his death. Because the evidence was sufficient to support the jury's finding of the *mens rea* necessary to convict Appellant of murder, the trial court did not err in denying Appellant's motion for directed verdict. Issue Three is overruled.

## CONCLUSION

The trial court did not abuse its discretion in refusing to suppress Appellant's recorded

statement, because the evidence and the recording demonstrated that Appellant knowingly, intelligently, and voluntarily waived her *Miranda* rights. The trial court did not abuse its discretion in refusing to submit criminally negligent homicide as a lesser-included offense, because there was no evidence that Appellant was unaware that a risk of death or serious bodily injury existed. In any event, in light of the jury's conviction of Appellant of murder instead of the lesser-included offense of manslaughter, any error in failing to charge the jury on criminally negligent homicide was harmless. The trial court did not err in refusing to grant directed verdict, because the evidence was legally sufficient to support the *mens rea* element of the murder conviction. Accordingly, we affirm the trial court's judgment.


STEVEN L. HUGHES, Justice

January 28, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)