IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00371-CR

 

Jamal Peters,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 413th District
Court

Johnson County, Texas

Trial Court No. F41221

 



MEMORANDUM  Opinion



 

Appellant Jamal Peters pleaded guilty to
the offense of aggravated robbery.  He elected to have the jury assess his
punishment and was sentenced to fourteen years’ imprisonment.  In his sole
issue, Peters contends that the trial court erred by not allowing him to
testify at punishment as to the sexual nature of his relationship with the
victim.  We will affirm.

On the evening of January 18, 2007, the
victim responded to a knock at his front door.  As he began to open the door,
two men dressed in black and wearing masks and gloves rushed into his home.  The
victim recognized one of the intruders as Peters, who occasionally worked at his
home and at his pet-grooming business.  The victim did not recognize the other
intruder, who was later identified as Michael Bean.  Bean pushed the victim
against the wall, put a gun up to his head, and demanded money.  When the
victim replied that he did not have any money, Bean hit him in the head with
the butt of the gun.  The men then pushed the victim into the kitchen.  Soon
thereafter, Bean forced the victim into the bedroom.  The victim saw that Peters
had located a safe that the victim kept hidden in his bedroom closet.  Peters
and Bean had the victim get the key and open the safe.  The safe contained about
$4,000.  As Peters and Bean then tried to figure out if they could steal any
other items, Bean hit the victim in the head about seven times.  Peters and
Bean then put the victim on the floor in the utility room, and Peters bound the
victim with duct tape.  Peters also ripped out the telephones from the wall. 
In all, Peters and Bean took about $4,000 from the safe, an antique butter
churn full of coins, and the victim’s cell phone.

Prior to trial, the State filed a motion
in limine asking the trial court in part to order Peters, his counsel, and
defense witnesses not to allude to, refer to, or in any way bring before the
jury any matter regarding “evidence of character or conduct of any State’s
witness” and “[t]he personal habits of the State’s witnesses such as drinking,
use of drugs or sexual activity, not shown to the Court to be material to this
cause” without first approaching the bench and advising the court.  The trial
court granted the motion in limine.

During the punishment phase, Peters
testified that he is a Hurricane Katrina evacuee who arrived in Cleburne,
Texas, in 2006 when he was seventeen years old.  Peters was looking for a job,
so a friend introduced him to the victim.  Peters worked for the victim for
approximately seven or eight months.  Peters stated that the victim would pay
him daily or weekly, depending on what type of job it was.  Peters earned $15
to $20 or $60 to $70, depending on what type of job it was.  When asked what
type of things he would have to do for the victim in order to get paid, he
replied, “Well, he would have me mow -- mow his lawn, shovel the dog droppings,
clean the kitty litter boxes, and have sex with him.”  At that time, the State
asserted that the answer was a violation of the motion in limine.

At defense counsel’s request, a hearing on
the admissibility of the testimony was held outside the presence of the jury. 
During the hearing, Peters testified that the victim, aware of Peters’ need for
more money, offered to pay Peters to have sex with him.  Peters was seventeen
years old at the time, and he thinks the victim was forty or fifty.  Peters
agreed to the offer from the victim on a business basis only, and he and the
victim would have sex two or three times a week for which Peters would receive
$60 to $100 per encounter.  The trial court sustained the State’s objections,
including relevancy and Rule 403, and excluded the evidence.

 We review a trial court’s admission or
exclusion of evidence for an abuse of discretion.  Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002).  Under an abuse of discretion standard,
we will uphold the decision of the trial court concerning the admissibility of
evidence unless the ruling rests outside the zone of reasonable disagreement.  Martin
v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Section 3(a) of article 37.07 of the
Code of Criminal Procedure governs the admissibility of evidence at punishment: 


Regardless of the plea and whether the
punishment be assessed by the judge or the jury, evidence may be offered by the
state and the defendant as to any matter the court deems relevant to
sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, an opinion regarding his
character, the circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence
of an extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been charged
with or finally convicted of the crime or act.  

 

Tex. Code Crim.
Proc. Ann. art. 37.07, §
3(a)(1) (Vernon Supp. 2010).  Relevancy in the punishment phase is “a question
of what is helpful to the jury in determining the appropriate sentence for a
particular defendant in a particular case.”  Rogers v. State, 991 S.W.2d
263, 265 (Tex. Crim. App. 1999).  In punishment, then, admissibility of
evidence is more a matter of policy than of “logical relevance.”  Id. 
We will assume that Peters’ testimony was relevant in the punishment phase.

            But under Rule 403,
otherwise relevant evidence “may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Tex. R. Evid. 403.  

In its seminal decision in Montgomery
v. State, the Court of Criminal Appeals identified four non-exclusive
factors to be considered in determining whether evidence should be excluded
under Rule 403.  810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh’g). 
Those factors were:  (1) the probative value of the evidence; (2) the potential
to impress the jury in some irrational, yet indelible way; (3) the time needed
to develop the evidence; and, (4) the proponent’s need for the evidence.  See
id. (citing 22 Charles A. Wright
& Kenneth W. Graham, Federal Practice and Procedure § 5250, at
545-51 (1978); Edward J. Imwinkelried,
Uncharged Misconduct Evidence §§ 2:12, 8:03, 8:07 (1984)); accord
Prible v. State, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

 

More recently, the Court has looked to
the language of Rule 403 and restated the pertinent factors.

 

[A] trial court, when undertaking a Rule
403 analysis, must balance (1) the inherent probative force of the proffered
evidence along with (2) the proponent’s need for that evidence against (3) any
tendency of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has
not been equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admitted.  Of course, these factors
may well blend together in practice.

 

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim.
App. 2006) (footnotes omitted); accord Subirias v. State, 278 S.W.3d
406, 408 (Tex. App.—San Antonio 2008, pet. ref’d); Brock v. State, 275
S.W.3d 586, 590 (Tex. App.—Amarillo 2008, pet. ref’d); Stafford v. State,
248 S.W.3d 400, 411-12 (Tex. App.—Beaumont 2008, pet. ref’d); but see De La
Paz [v. State], 279 S.W.3d [336, 349 (Tex. Crim. App. 2009)] (applying Montgomery
factors).

 

Newton v. State, 301 S.W.3d 315, 319 (Tex. App.—Waco
2009, pet. ref’d) (footnote omitted).

            Peters contends that his
testimony that the victim, “an older man,” was paying him, “a 17 year old boy,”
for sexual activity, combined with the testimony of his family and severe
financial troubles, was necessary to show that the victim had Peters “backed
into a corner where the only options Mr. Peters saw were prostitution or stealing.” 
Peters states in his brief, “This type of argument would be something that a
jury would most certainly take into account when determining why, the then
seventeen year old, Mr. Peters, would rob someone who had given him a job, and
it might have shortened Mr. Peter’s [sic] jail term.”

But nothing in the record suggests a
connection between the alleged sexual arrangement between Peters and the victim
and the aggravated robbery.  As the State points out in its brief, there was no
mention that the victim failed to pay for one of the sexual encounters or that
Peters was shortchanged in any way for sexual services rendered.  Furthermore,
the testimony would tend to suggest a decision on an improper basis and tend to
confuse or distract the jury from the main issues.  And while the presentation
of this evidence would not consume an inordinate amount of time, it would be partially
repetitious of evidence already admitted.  Peters had already testified at the
punishment phase that the victim paid him for sex.

            For these reasons, the trial
court did not abuse its discretion in excluding Peters’ testimony at punishment
as to the sexual nature of his relationship with the victim.  We overrule
Peters’ sole issue and affirm the trial court’s judgment.








 

REX D. DAVIS

Justice




Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed November 24, 2010 

Do
not publish

[CR25]