IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00016-CR

 

David Lester Bethards,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 249th District
Court

Johnson County, Texas

Trial Court No. F42295

 



MEMORANDUM  Opinion

ON PETITION FOR DISCRETIONARY REVIEW



 

As authorized by Rule 50 of the Rules of
Appellate Procedure, we issue this modified opinion within 60 days after
Appellant filed a Petition for Discretionary Review.  Tex. R. App. P. 50.

A jury found David Lester Bethards
guilty of fourteen counts of possession of child pornography.  The trial court
assessed his punishment at five years’ imprisonment for counts one through nine
and ten years’ imprisonment for counts ten and twelve through fifteen.[1] 
In three issues, Bethards appeals.  We will affirm.

In his first issue, Bethards contends
that the trial court erred in denying his motion to suppress because his
consent to search was involuntary.

Bethards moved to suppress “[a]ny and
all tangible evidence seized by law enforcement officers or others . . . in
connection with the investigation of this case, including but not limited to
the computers” that were seized from his residence.  Cleburne Police Department
Investigator Shawn Bagwell testified that, on July 24, 2007, Investigator Kelly
Summy informed him that she had received information that Bethards might have
child pornography on his home computer and that she had begun the process of
obtaining a search warrant for Bethards’s residence and, specifically, for his
computer.  The next day, however, Summy told Bagwell that the complainant had
called and revealed that she had told Bethards about the complaint, even though
she had previously agreed not to tell him until the police could meet with
him.  Bagwell and Summy thus went to Bethards’s home to prevent destruction of
any potential evidence.

Bethards answered the door, and Bagwell
and Summy introduced themselves.  Bethards stepped out onto the porch and shut
the door.  Bagwell explained to Bethards that they had received a complaint
that there might be child pornography on his computer.  Bethards stated that, during
the previous few days, he had been “goofing around” on the computer when he
clicked on the wrong button, causing multiple images of child pornography to
appear on his computer screen.  He said that each time an image would appear,
he would attempt to close the image but that he had not attempted to delete any
of the images of child pornography from his computer because he had wanted to
show his wife what had happened.  Bagwell then asked Bethards for consent to take
his computer.  Bagwell told Bethards that he did not have to give them consent
and that they had already begun the process of attempting to obtain a search
warrant for his house and computer but that they would like to have his consent.
 Bethards denied consent.  Bagwell then told Bethards that until the search
warrant was either granted or denied, he was not going to allow Bethards to go
back into his house because it was necessary to preserve the electronic
evidence.  Bethards then let Bagwell and Summy inside the house and told them
that they could take the computer.

Bagwell and Summy ultimately took two
computers from Bethards’s home.[2] 
Bagwell sought Bethards’s consent to seize each computer individually, and
Bethards affirmed his consent.  Even after Bagwell and Summy were in the house
and Bagwell had unplugged Bethards’s computer, Bagwell explained to Bethards
that they still had not left with the computers and he had the right to revoke
his consent and wait until the search warrant was either granted or denied. 
Bethards again affirmed his consent.  At the conclusion of the search, Bagwell
asked Bethards to come visit with him at the police department the next day.  Bethards
indicated that he would.

The next day, Bethards went to the
police station and met with Bagwell.  During the meeting, Bethards again
expressed his consent to their taking the computers.  Bethards stated that
although he had thought at one point that he should have made Bagwell get a
search warrant, he thought that it would make him look guilty, so he decided to
let Bagwell have the computers.  Furthermore, Bagwell called Bethards later
that day to inform him that he was taking his computer to have it analyzed and
he just wanted to make sure that Bethards had not changed his mind.  Bethards
again affirmed his consent.

Bethards testified that when Bagwell
first arrived at his home, he felt like he had the choice to consent or refuse
to allow Bagwell into his home; he at first had denied consent.  However, when Bagwell
then told Bethards that he was going to keep him out of his home, Bethards felt
like he no longer had any choice, and he let Bagwell into his home.

We review a trial court’s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We give almost total
deference to the trial court’s rulings on (1) questions of historical fact,
even if the trial court’s determination of those facts was not based on an
evaluation of credibility and demeanor; and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Johnson
v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002) (citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s ruling on those
questions de novo.  Id.  When, as here, the trial court does not
make explicit findings of fact in ruling on a motion to suppress evidence, we
“review the evidence in a light most favorable to the trial court’s ruling and
assume that the trial court made implicit findings of fact supported by the
record.”  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting
Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)); Carmouche,
10 S.W.3d at 327-28.

A search conducted without a warrant
issued on probable cause is per se unreasonable.  Fancher v. State,
659 S.W.2d 836, 839 (Tex. Crim. App. 1983).  However, consent to search
is one of the well-established exceptions to the warrant requirement.  See
State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997).  The State
must prove by clear and convincing evidence that the consent to search was
voluntary.  Id.

Bethards argues that there are two key
factors to consider in determining that his consent was involuntary:  (1) he believed
he “had been constructively evicted from his own home for an indefinite period
of time” and (2) law enforcement had a less restrictive restraint available to
them but chose not to employ it.  First, while the state of Bethards’s mind is
a factor to be evaluated in assessing the voluntariness of his consent, it alone
is not determinative.  See Schneckloth v. Bustamonte, 412 U.S. 218,
226-27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000).  The question of whether a consent to
search was “voluntary” is a question of fact to be determined from the totality
of the circumstances.  Reasor, 12 S.W.3d at 818.  Second, even though
Bethards states that if he had been informed that he could have waited inside
his home, with law enforcement accompaniment, during the time required to
obtain a ruling on the requested search warrant, “he would not have been put to
the choice of being either constructively evicted from his home or giving
consent for law enforcement to search it,” our analysis of whether his consent
was given voluntarily remains the same.  As Bethards acknowledges in his brief,
“[t]he question before the Court on appeal in the present case is not whether
law enforcement could reasonably prevent Appellant from reentering his
residence, but whether, upon a review of the totality of the circumstances,
Appellant’s consent was involuntary.”  Cf. Illinois v. McArthur, 531
U.S. 326, 331-33, 121 S.Ct. 946, 950-51, 148 L.Ed.2d 838 (2001) (in deciding
brief warrantless seizure of premises was reasonable while waiting on warrant,
court considered police made reasonable efforts to reconcile law enforcement
needs with demands of personal privacy by imposing least restrictive
restraint).

Although Bagwell and Summy were wearing
badges and firearms, they did not exhibit a show of force and instead
consistently spoke with Bethards in a professional and conversational manner. 
Bethards was not arrested.  Bagwell informed Bethards more than once that he
had the right to refuse to allow the search.  When Bethards once protested that
if he refused, then the investigators were going to throw him out of his own
home, Bagwell clarified that they were not, in fact, going to throw Bethards
out of his home.  Rather, they were only temporarily going to disallow him from
going into the house until the search warrant was either granted or denied.  See
Goines v. State, 888 S.W.2d 574, 578 (Tex. App.—Houston [1st Dist.] 1994,
pet. ref’d) (informing appellant that officers had right to get search warrant
did not render appellant’s subsequent consent involuntary).  Bagwell had
previously told Bethards that the District Attorney’s office was already
reviewing the search warrant for the home.  Considering the totality of the
circumstances, we conclude that Bethards’s consent to search was voluntary and
that the trial court did not err in denying the motion to suppress.  We
overrule Bethards’s first issue.

In his second issue, Bethards contends
that the trial court abused its discretion in admitting testimony about
voluminous pornographic images found on his computer because the probative
value of such evidence was substantially outweighed by unfair prejudice. 
Special Agent John Day of the United States Secret Service testified that he
found more than 1,200 child pornography images on Bethards’s computer.  The
trial court then gave the jury a Rule 404(b) instruction on this
extraneous-offense evidence.  The next day, the State introduced into evidence
twelve of the child pornography images that were not subject matter of the
indictment.  Just before the images were published to the jury, the trial court
again gave the jury a Rule 404(b) instruction on the extraneous-offense
evidence.

            We review a trial court’s
decision to admit or exclude evidence for an abuse of discretion.  McDonald
v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  “Under an abuse of
discretion standard, an appellate court should not disturb the trial court’s
decision if the ruling was within the zone of reasonable disagreement.”  Bigon
v. State, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Under Rule 403, otherwise relevant
evidence “may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of
cumulative evidence.”  Tex. R. Evid. 403.

In its seminal decision in Montgomery
v. State, the Court of Criminal Appeals identified four non-exclusive
factors to be considered in determining whether evidence should be excluded
under Rule 403.  810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh’g). 
Those factors were:  (1) the probative value of the evidence; (2) the potential
to impress the jury in some irrational, yet indelible way; (3) the time needed
to develop the evidence; and, (4) the proponent’s need for the evidence.  See
id. (citing 22 Charles A. Wright
& Kenneth W. Graham, Federal Practice and Procedure § 5250, at
545-51 (1978); Edward J. Imwinkelried,
Uncharged Misconduct Evidence §§ 2:12, 8:03, 8:07 (1984)); accord
Prible v. State, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

 

More recently, the Court has looked to
the language of Rule 403 and restated the pertinent factors.

 

[A] trial court, when undertaking a Rule
403 analysis, must balance (1) the inherent probative force of the proffered
evidence along with (2) the proponent’s need for that evidence against (3) any
tendency of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has
not been equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admitted.  Of course, these factors
may well blend together in practice.

 

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim.
App. 2006) (footnotes omitted); accord Subirias v. State, 278 S.W.3d
406, 408 (Tex. App.—San Antonio 2008, pet. ref’d); Brock v. State, 275
S.W.3d 586, 590 (Tex. App.—Amarillo 2008, pet. ref’d); Stafford v. State,
248 S.W.3d 400, 411-12 (Tex. App.—Beaumont 2008, pet. ref’d); but see De La
Paz [v. State], 279 S.W.3d [336, 349 (Tex. Crim. App. 2009)] (applying Montgomery
factors).

 

Newton v. State, 301 S.W.3d 315, 319 (Tex. App.—Waco
2009, pet. ref’d) (footnote omitted).

            Probative force of the
evidence:  The testimony about the over 1,200 child pornography images
found on Bethards’s computer is probative because it assists the jury in
determining that the images did not arrive there by accident or mistake.  Bethards
acknowledges this in his brief.  This factor weighs in favor of admissibility.

            Proponent’s need for that
evidence:  The State needed the testimony to rebut the defensive theories
raised by Bethards (i.e., that the images were on his computer by
accident or mistake because they were pop-ups, caused by viruses, and/or
occurred when he hit a wrong key).  This factor weighs in favor of
admissibility.

            Tendency of evidence to
suggest a decision on an improper basis:  Limiting instructions were given
(both orally and in the jury charge) limiting the jury’s consideration of this
extraneous-offense evidence.  Bethards argues that the “sheer volume of images
referred to is not the type of evidence which the jury could reasonably
consider only for a limited purpose, even with the instruction requested by
Appellant’s trial counsel and granted by the trial court.”  But juries are
presumed to follow the trial court’s instructions in the manner presented.  See
Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996).  And here,
there is no evidence that the jury was confused by the instruction or the
charge.  Furthermore, the jury was told that there were over 1,200 images of
child pornography found on Bethards’s computer, but they only viewed twelve images
that were not subject matter of the indictment.  This factor does not weigh in
favor of exclusion of the evidence.

            Jury confusion or
distraction, undue weight, and amount of time or repetition:  These factors
concern whether presentation of the evidence consumed an inordinate amount of
time or was repetitious, and the evidence’s tendency to confuse or distract the
jury or to cause the jury to place undue weight on its probative value.  See
Gigliobianco, 210 S.W.3d at 641-42; Newton, 301 S.W.3d at 320.  Bethards
acknowledges that the amount of time required to develop this evidence was
relatively short.  We do not believe that it could cause jury confusion or
distraction or cause the jury to give it undue weight.  All of these factors
thus favor admission.

Rule 403 “envisions exclusion of
[relevant] evidence only when there is a ‘clear disparity between the degree of
prejudice of the offered evidence and its probative value.’”  Hammer v.
State, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting Conner v.
State, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).  We cannot say that
there is a “clear disparity” between the danger of unfair prejudice posed by
the extraneous-offense evidence and its probative value.  Thus, the trial court
did not abuse its discretion by overruling Bethards’s Rule 403 objection.  We
overrule Bethards’s second issue.

In his supplemental issue,[3]
Bethards contends that the evidence was insufficient to support his conviction
because the State did not prove that he intentionally or knowingly possessed
child pornography.

When reviewing a challenge to the
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person commits the offense of possession
of child pornography if he “knowingly or intentionally possesses visual
material that visually depicts a child younger than 18 years of age at the time
the image of the child was made who is engaging in sexual conduct; and . . .
the person knows that the material depicts the child [engaging in the sexual
conduct].”  Tex. Penal Code Ann. §
43.26(a) (Vernon 2003).  A person possesses something when he exercises actual
care, custody, control, or management over it.  Id. § 1.07(a)(39)
(Vernon Supp. 2011).

A person acts intentionally, or with
intent, with respect to the nature of his conduct or to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause
the result.  Id. § 6.03(a) (Vernon 2003).  A person acts knowingly, or
with knowledge, with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that
the circumstances exist.  Id. § 6.03(b).  A person acts knowingly, or
with knowledge, with respect to the result of his conduct when he is aware that
his conduct is reasonably certain to cause the result.  Id.  Proof of a
culpable mental state almost invariably depends upon circumstantial evidence.  Gant
v. State, 278 S.W.3d 836, 839 (Tex. App.—Houston [14th Dist.] 2009, no
pet.) (citing Lee v. State, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000,
pet. ref’d)).  A jury can infer knowledge from all the circumstances, including
the acts, conduct, and remarks of the accused and the surrounding
circumstances.  Id.

Special Agent Day testified that the
images corresponding to counts one through five, seven through ten, and twelve
through fifteen were found in the unallocated space of the hard drive.  The
image corresponding to count six was found in the temporary internet files of
the hard drive.  Day testified that when one looks at a web page, the graphics
become artifacts that are automatically placed into the temporary internet
history.  If a person wanted to open a temporary internet folder, then they
could click on those pictures and look at them again.  When the temporary internet
folders are full, the oldest content is then emptied into unallocated space.

Bethards’s sister testified that when
she visited him in late April of 2007, Bethards told her that he had bought the
computer used.  During that visit, she did a “basic tune-up” on the computer,
which included deleting the temporary internet files on the computer at that
time.  Day testified that the image in the temporary internet file was stored
on the computer on July 23, 2007.

Day also testified that the computer had
dates going back to 2000 and that there was no way to tell when the fourteen
pictures that were found in the unallocated space were placed on the hard drive
but that, from July 23 to July 24, 2007, Bethards’s computer was used to visit
over 400 websites containing child pornography images and to make over 115
searches for child pornography.  There were some viruses on Bethards’s
computer, but he did not think they were capable of or designed to generate
child pornography on the computer.  In his opinion, the images were not the
result of pop-ups due to the sheer volume of the images and the various types
of images.

Bethards’s wife testified that she saw
Bethards looking at a child pornography website on the computer.  On July 24,
2007, she called and asked her son to come over and pull up the Internet
history on the computer.  He found several child pornography websites that had
been placed under “favorites.”  Investigator Bagwell testified that when he
talked to Bethards on July 26, 2007, Bethards acknowledged that there was child
pornography on his computer and stated that it began appearing on his computer
a few weeks prior.  Bethards testified that he was on a “legal” website when
web pages containing child pornography began popping up.  He eventually had to
unplug his computer.  The next day, the same thing happened, but before
unplugging the computer, he bookmarked the websites so that he could report
them to the webmaster.  Bethards testified that he had intentionally searched
for child pornography no more than six times because he was curious and was
looking for information on whether the websites were legal and how to stop them
from taking over his computer.

Relying on Barton v. State, 648
S.E.2d 660 (Ga. Ct. App. 2007), and several federal circuit court cases,
Bethards contends that the evidence is insufficient to show that he
intentionally or knowingly possessed the images in this case because the images
were stored in temporary internet files.  However, the Texas courts that have
addressed this issue have concluded that images stored as temporary internet
files can amount to knowing possession by the user of the computer.  See
Gant, 278 S.W.3d at 840-41; see also Anders v. State, No. 10-09-00147-CR,
2010 WL 4813678, at *1 (Tex. App.—Waco Nov. 24, 2010, pet. struck) (mem. op.,
not designated for publication).

In this case, there is evidence that the
images on Bethards’s computer did not appear by default or accident but that he
intentionally or knowingly possessed them.  We are required to defer to the
jury’s credibility and weight determinations because the jury is the sole judge
of the witnesses’ credibility and the weight to be given their testimony.  See
Jackson, 443 U.S. at 326; 99 S.Ct. at 2793.  Viewing all the evidence in
the light most favorable to the verdict, we conclude that the evidence is
sufficient to support Bethards’s conviction.  We overrule Bethards’s
supplemental issue.

Having overruled all Bethards’s issues,
we affirm the trial court’s judgment.  Our opinion and judgment dated April 13,
2011, are withdrawn, and this opinion is substituted as the opinion of the
court.  Tex. R. App. P. 50(a).

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion
delivered and filed July 20, 2011

Do
not publish

[CR25]









[1] The State had waived count eleven.





[2] Bethards’s mother’s computer was also
in the home, and it was seized.





[3] Bethards requested and was granted
leave to file a supplemental appellant’s brief.