# NO. 12-18-00236-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERRY WAYNE PIXLEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jerry Wayne Pixley appeals his conviction for manslaughter. He presents three issues on appeal. We affirm.

## BACKGROUND

On or about September 6, 2016, Amie Nicole Malone Williams went to Appellant's trailer. Williams was a known drug addict, and it appeared she went to Appellant for that purpose. Appellant was known to prepare shots of methamphetamine and inject them into people. Appellant arrived at his trailer approximately thirty minutes after Williams. Appellant's trailer was located on William Baggett's property. Baggett saw Appellant and Williams leave the trailer approximately twenty minutes later and Williams appeared ill. Baggett testified that Williams tapped her chest and said that she could not breathe before falling to her knees. Appellant picked her up, put her into his vehicle, and left.

Tiffany Brock saw a vehicle pulled over to the side of the road. Appellant was in the ditch performing chest compressions on Williams. Appellant told her that he picked Williams up on the side of the road and was taking her to the hospital because she could not breathe. When the emergency medical technicians (EMTs) arrived, Appellant claimed to not know Williams and that he picked her up on the side of the road. EMT Trent Waggnone testified that Appellant claimed

he only knew the patient's name and that she had a history of heroin abuse. Therefore, Waggnone administered an opioid antidote called Narcan in an attempt to counteract the effects of heroin. The EMTs took Williams to the hospital.

James Malone, Williams's father, learned that his daughter was missing and began calling the local hospitals. He learned that a "Jane Doe" had been dropped off at the hospital and he identified her as his daughter. He was told that "it wasn't good" and that she "had overdosed." Williams died at the hospital.

Appellant was charged by indictment with manslaughter by introducing a controlled substance into Williams's body. The indictment alleged that the controlled substance used was capable of causing death or serious bodily injury. The indictment also included two enhancement paragraphs making Appellant eligible for punishment as a habitual offender.

Appellant pleaded "not guilty" and the matter proceeded to a jury trial. Following presentation of evidence and arguments, the jury found Appellant "guilty" of manslaughter and found that a deadly weapon was used or exhibited during the offense. Following evidence and argument on punishment, the jury assessed punishment at life in prison. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends the evidence is insufficient to support his conviction. Specifically, Appellant argues the evidence fails to establish causation.

## Standard of Review

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed.

2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

## Applicable Law

A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2019). "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id*. § 6.04(a) (West 2011). Under Section 6.04(a), a "but for" causal connection must be established between the defendant's conduct and the resulting harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). Two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself

to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id*. If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id*.

**Analysis**

Appellant urges that the evidence is insufficient to support causation. Specifically, he contends the evidence is insufficient to establish that the victim died from a lethal drug injection.

In support of his argument, Appellant relies on the testimony of Dr. James Mopur, the State's expert witness. Dr. Mopur reviewed Williams's medical records and prepared her death certificate. The certificate listed the cause of death as "natural" and did not include drug overdose as a contributing cause. When asked if he knew what caused Williams's brain to cease functioning, Dr. Mopur responded, "I don't know." Appellant contends that Dr. Mopur's inability to definitively state that Williams died from a drug overdose negates causation.

However, Appellant neglects other testimony and evidence introduced at trial. Kayla Renfro testified that Appellant told her that Williams "was in the hospital in a coma, and that he had shot her up, not once but twice with heroin." She and Appellant also had a conversation about "hot shotting." Renfro testified as follows:

> A. A hot shot is something you give someone when you want to hurt them.
> Q. How do you know that?
> A. I've heard a lot about it.
> Q. Okay. What's in the hot shot, if you know?
> A. Really anything. They can put anything in a hot shot.
> Q. What are some of things that you've known to be in a hot shot?
> A. Just a mixture of like -- you can put meth with anything, or you can put heroin with anything. Just a number of things.
> Q. Okay. So he tells you that he did this to her twice?
> A. Yes, ma'am.

Renfro further testified that Appellant previously gave her $100 to purchase methamphetamine. Renfro gave the money to the supplier; however, Appellant never received the drugs and was angry. Approximately one week after Williams's death, Appellant left Renfro a voicemail that stated, "Well, undoubtedly, little Ms. Kayla, you haven't heard about the last motherfucker that fucked me over, but I suggest you just leave town." Renfro believes that Appellant's message was

4

a reference to Williams because he had said Williams "snitched on him" previously and he went to prison for it.

Williams's father testified that his daughter told him that "Jerry Wayne Pixley said he was going to get her, and he was going to kill her because she snitched on him years before." Malone testified that the doctors told him that his daughter died of an overdose.[1]

Rebecca Fletcher testified that she went to Appellant's trailer to use drugs. While there, Fletcher asked Appellant if he killed "Amie Malone." Fletcher testified as follows:

> Q. Okay. What was his response?
> A. He said, yes, he did.
> Q. Okay. Did he give any details?
> A. Yes, ma'am.
> Q. Okay. Tell me about the details?
> A. He told me that he was trying to get her back for ten years prior she snitched on him, and that he said that he was trying get her back. So that night he was trying to get her busted. So that night he took her over to the north side to get her stuff. He said the whole time he was texting his handler or whatever the cop that he was trying to get her busted with. And he never got no response, so whenever he went back, whenever they went back, they made up the shots. She done one and she left with Shanon.
> Q. Okay.
> A. And then when she came back from Shanon's is when he gave her the other shot. And when she started saying she didn't feel good, that she couldn't breathe, he told her he didn't believe her. That she couldn't stay there; that she had to go and he would take her anywhere she needed to go, but she couldn't stay there.

Fletcher further testified that Appellant admitted to giving Williams a hot shot of methamphetamine and heroin. She stated that a hot shot is something you give a person to either scare or kill them.

Williams's medical records indicated that she had opiates, heroin, and amphetamine in her system. Dr. Mopur testified that the medical records reflected her immediate cause of death as cardio-pulmonary arrest and her official cause of death was acute hypoxemic encephalopathy. Hypoxemic encephalopathy is neurological damage to the brain due to deprivation of oxygen, blood, or both for several minutes. According to Dr. Mopur, the records further reflect that a possible heroin overdose was involved and that Williams's urine tested positive for heroin, opiates, and amphetamine. Dr. Mopur testified that he could not say what caused the injury to Williams's

---

[1] Even though the admissibility of this evidence has been challenged in Appellant's third issue, even arguably inadmissible evidence must be considered in determining the sufficiency of the evidence to support a conviction. *Porier v. State*, 662 S.W.2d 602, 605-606 (Tex. Crim. App. 1984) (en banc).

5

brain, which caused it to stop functioning, but he also stated that opioid use could cause brain damage. He further stated that, hypothetically, a lethal dose of heroin, methamphetamine, or a combination of the two could have caused her brain damage. When asked, Dr. Mopur stated that, hypothetically, if Williams was given two hot shots of heroin, methamphetamine, or a mixture, it most likely could cause hypoxemic encephalopathy. Had he seen the injections and Williams fall to the floor, he would have been able to say that the injections caused her brain damage. He testified that there were "so many contributing factors which could have caused her death" and that it was difficult to choose a cause of death. However, he testified that too much heroin injected into the body "caused the initial damage to the brain that caused the edema" and, eventually, death.

Accordingly, the jury heard evidence that Appellant told people that he gave Williams hot shots and that those shots led to Williams's death. The jury further heard evidence that hot shots can be a combination of heroin and other drugs and that Williams had heroin, amphetamine, and opiates in her system. In addition, evidence was presented that Appellant had a motive to harm Williams because of events that transpired in the past.

Based on the evidence presented, the jury could reasonably conclude that Williams's death would not have occurred but for Appellant's injecting her with a hot shot. *See* TEX. PENAL CODE ANN. § 6.04. As sole judge of the weight and credibility of the evidence, the jury was free to believe or disbelieve any portion of the witnesses' testimony, and we presume the jury resolved any conflicts in favor of the prevailing party. *See **Brooks**,* 323 S.W.3d at 899; ***Wooten v. State***, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). As a result, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Appellant recklessly caused the death of Williams by introducing a controlled substance into her body. *See* TEX. PENAL CODE ANN. § 19.04(a); *see also **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; ***Brooks***, 323 S.W.3d at 912. Because the evidence is sufficient to support the jury's verdict, we overrule Appellant's first issue.

## CHARGE ERROR

In his second issue, Appellant posits the trial court erred when it failed to include a causation instruction in the jury charge.

**Standard of Review**

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. ***Id.*** Then, if there is charge error, the court must determine whether there is sufficient harm to require reversal. ***Id.*** at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. ***Id.*** at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment when the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. ***Id.*** In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." ***Id.***

The record must show that the defendant suffered actual harm, not merely theoretical harm. ***Id.*** at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. ***Farmer v. State***, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

Generally, a trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The charge must include an instruction on any defensive theory raised by the evidence and properly requested by the defendant. ***Booth v. State***, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). But the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues because they are not "the law applicable to the case." ***Vega v. State***, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant who fails to preserve his request for a defensive instruction cannot complain about its omission on appeal because he procedurally defaulted his complaint. ***Id.***

**Analysis**

Appellant complains that the trial court's jury charge did not include the causation language from Section 6.04 of the Texas Penal Code. Under Section 6.04, "A person is criminally

responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a). According to Appellant, causation is an element of the offense of manslaughter, and, therefore, causation under Section 6.04 is "the law applicable to the case." Because the trial court is required to include the law applicable to the case in the charge, Appellant contends the trial court erred by omitting it. The State contends that concurrent causation under Section 6.04 is a defensive theory, and the trial court is not required to sua sponte include defensive issues in the jury charge. The State further argues that concurrent causation was not raised by the evidence.

In this case, even if we were to assume the trial court erred in omitting the concurrent causation instruction, such alleged error is not harmful. Appellant did not object to the charge presented to the jury or request the concurrent causation instruction at trial. Therefore, Appellant must show he was egregiously harmed by the omission. *See Almanza*, 686 S.W.2d at 171.

The trial court's charge instructed the jury that a person commits manslaughter if he recklessly causes an individual's death. In closing, the State argued that Appellant's use of controlled substances was the manner and means that caused Williams's death. Defense counsel argued that the evidence did not exist to show what caused Williams's death. However, there is ample evidence from which the jury could reasonably conclude that Williams's death would not have occurred but for Appellant's conduct, standing alone. As shown above, the evidence was sufficient to show that, but for the injections administered by Appellant, Williams would not have died. As previously discussed, the jury heard evidence that Appellant had a motive to kill Williams, which he expressed to at least one witness. In addition, the evidence demonstrated that Williams was not in respiratory distress until after entering Appellant's trailer and his administering two injections. The jury also heard evidence that Appellant lied about finding Williams on the side of the road. Furthermore, there was evidence that Appellant admitted that the injections of heroin and methamphetamine killed Williams. Accordingly, the evidence of Appellant's guilt was so strong that, even absent a concurrent causation instruction, Appellant cannot demonstrate egregious harm. *See id.* Appellant's second issue is overruled.

In his third issue, Appellant contends the trial court abused its discretion by admitting into evidence certain statements made by the victim's treating physician. He urges the statements are inadmissible hearsay and that their admission into evidence was harmful.

**Standard of Review and Applicable Law**

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.–Tyler 2011, pet. ref'd). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Manuel*, 357 S.W.3d at 74.

Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Id.*; *see Garcia v. State,* 126 S.W.3d 921, 927 & n.9 (Tex. Crim. App. 2004); *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). This includes both oral and written expressions. TEX. R. EVID. 801(a)(1). "An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay." *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.–Houston [1st Dist.] 2015, pet. ref'd); *Stafford v. State*, 248 S.W.3d 400, 407 (Tex. App.–Beaumont 2008, pet. ref'd) (citing *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App.1999)). A statement is not hearsay if its relevancy does not hinge on its truthfulness. *Johnson v. State*, 425 S.W.3d 344, 346 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd).

**Analysis**

Appellant contends the trial court abused its discretion when it overruled his hearsay objection to the following testimony:

> Q. So can you tell the members of the jury if they told you, the doctors, what was it that caused her death?
> MR. REEVES: I'll object to hearsay, Your Honor.
> MR. DIES: 804(e) present sense impression, Your Honor. I offer it for the truth of the matter

asserted.

THE COURT: I'll allow it. Go ahead and answer the question. Repeat the question.

Q. (BY MR. DIES) What did they tell you she died of?

A. Overdose.

However, Appellant did not object when James Malone first testified that hospital staff told him that his daughter overdosed:

Q. And then what next with Amie at the hospital?

A. They said it wasn't good that she was brought in. Had overdosed.

To preserve error in the admission of evidence, a party must make a proper objection and obtain a ruling on it. TEX. R. APP. P. 33.1; *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Furthermore, a party must object each time the allegedly inadmissible evidence is offered and obtain a ruling. *Valle*, 109 S.W.3d at 509. Because Appellant failed to object the first time Malone testified that he learned his daughter overdosed, any hearsay error was waived. *See id.; see also Jones v. State*, 111 S.W.3d 600, 606 (Tex. App.—Dallas 2003, pet. ref'd) ("any complaint concerning the admission of evidence is waived when a party fails to object to the same or similar evidence admitted at another point in the trial").

However, assuming that Appellant's objection to hearsay was proper, any such error is harmless. Substantially similar evidence was introduced at trial, as such, the objected-to testimony is cumulative. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *see also Flores v. State*, 513 S.W.3d 146, 165 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (improper admission of testimony was harmless because same or similar evidence was admitted without objection elsewhere). In addition to Malone's testimony that he was told at the hospital that his daughter overdosed, one of the emergency medical technicians testified, without objection, that he reported the incident as a heroin overdose. Williams's medical records reflect that she was given an antidote for opioid overdose. And Dr. Mopur testified that too much heroin had been injected which caused the damage to Williams's brain, and eventually led to her death. As a result, we cannot say that the admission of Malone's testimony had a substantial and injurious effect or influence in determining the jury's verdict. *See Casey*, 215 S.W.3d at 885. Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 4, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 4, 2019**

**NO. 12-18-00236-CR**

**JERRY WAYNE PIXLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2018-0493)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*